## Dornfeld-Kunert Company v. Charles Volkmann.

## Gen. No. 13,585.

1. CORPORATIONS—*when admissions of vice-president binding.* Held, under the evidence in this case, that admissions made by the vice-president of a corporation were binding upon that corporation.

2. CONTRACTS—*what competent to aid interpretation.* If a contract is ambiguous, it is competent to permit the introduction of evidence which will enable the court to be in the position of the parties who made the contract at the time of its making.

3. CONTRACTS—*what competent to aid interpretation.* In order to aid in the interpretation of a contract, it is competent to permit the introduction of parol evidence as to the meaning of technical terms, which otherwise would be ambiguous.

4. INSTRUCTIONS—*must not invade province of jury.* An instruction is vicious, in that it invades the exclusive province of the jury to determine the facts by telling them that "there is no evidence that Dornfeld had any authority to act for and on behalf of the defendant with regard thereto."

5. INSTRUCTIONS—*must not ignore facts.* An instruction is erroneous which ignores a material admitted fact and excludes its consideration from the jury.

Assumpsit. Appeal from the County Court of Cook county; the Hon. WILLIAM C. DE WOLF, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed January 27, 1908.

EDMUND S. CUMMINGS, for appellant.

KARR STEELE, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The question in dispute between the parties to this appeal is, whether the erection of hoppers, conveyor boxes and steel curtains, is included in a contract for the erection of structural steel and iron used in the construction of a malting kiln and boiler house which appellant had contracted to build and erect for the American Malting Company. The contract involved between appellant and appellee was in writing.

A trial before the County Court resulted in a verdict for the amount of appellee's claim of $704.25, upon which, after the overruling of appellant's motion for a new trial, a judgment was entered. The usual objections were made and exceptions preserved to the rulings of the court challenged in argument, and we are asked to review the record and reverse the judgment of the trial court because, it is insisted, error was committed in the admission of extrinsic evidence to interpret certain words used in the contract, in admitting parol evidence of conversations contemporaneous with the execution of the writing, in not instructing the jury to find a verdict for appellant, in giving instructions tendered by appellee against the objection of appellant, and in refusing to give other instructions asked by appellant, and in not granting a new trial.

Appellant was the contractor for the whole construction work, and appellee was a subcontractor under it for the erection and putting in position of the structural steel and iron work. J. F. Dornfeld was

the architect for the American Malting Company, for whom the building was to be erected, and also the vice-president of appellant, a corporation.

It is first insisted in argument that, there being no direct proof of the authority of Dornfeld as vice-president of appellant to bind it, therefore the admissions of conversations of appellee and Snell with him were not binding on appellant. While we are not prepared to acquiesce in the correctness of this contention, we deem it sufficient to say that it will do no violence to legal principles to assume he had such authority in view of the fact that he was an officer of appellant and its main witness upon the trial, and that neither by his testimony nor that of any other witness is such authority denied or questioned. It is so apparent that both in the making of the contract and in the doing of the work under it by appellee, Dornfeld was acting in the main for appellant, that all that was done by appellee under the contract was so done without the protest of any of appellant's officers, to whom notice of the progress of the construction under the contract is imputable; therefore, if Dornfeld's actions were not authorized in the first instance, they must be held to have been ratified and acquiesced in by appellant, and consequently of binding force.

The evidence of Snell and Volkmann is to the effect that the first bid upon the contract was $1,920. Dornfeld thereupon said that the bid was too high, and told Volkmann, in the presence of Snell, that he, Volkmann, had "nothing to do with the hoppers, or any of that small stuff, curtains or conveyor boxes." After the making of this statement by Dornfeld, Volkmann reduced the bid to $1,650. This evidence is claimed to be inadmissible, as contrary to the plans and specifications upon which the bids were called for. In the light of the dispute as to what was called for by the contract, and the doubt cast upon the trans-

action by appellant's contention, that the disputed items were embraced in the contract, it seems to us a conversation of this character would be pertinent and material as furnishing light as to what the real intentions of the parties were, and what was intended by them to be covered by the contract. Representations thus made and fresh in the minds of the parties, in faith of which the contract was executed, would serve the purpose of putting the court and jury in the place which the parties occupied, and their attitude toward each other in relation to the subject-matter of the contract, and therefrom be better able to judge of their intentions and put such construction upon the contract as such evidence might disclose was their intention at the time. City of Chicago v. Sexton, 115 Ill. 230.

In the Sexton case the city kept tracings and plans in the office of the department of public works. These differed materially from the originals set forth in the contract, but by the former Sexton figured and made his bid, and it was held, notwithstanding they were variant from those referred to in the contract as originals, they must be held as controlling the rights of the parties.

The drawings and specifications referred to in the Volkmann contract embraced all the work and material to be done and furnished by appellant under its contract with the American Malting Company, a portion only of which was covered by appellee's contract. What was intended to be included in the terms "structural steel and iron," cannot be gathered from an unexplained reading of the contract by those not versed in such matters. Neither court nor jury, unaided by evidence of those familiar with these terms, could determine what was intended thereby. To the unskilled in steel and iron work these terms, unexplained, have no well-defined meaning.

The evidence as to what was structural steel and

iron according to the usage, custom and understanding of that trade, was properly admitted. Such evidence had no tendency to vary or change any of the terms or conditions of the contract. It simply furnished a light by which the court and jury might interpret its terms and understand its meaning. American Insce. Co. v. Meyers, 118 Ill. App. 484; Irwin v. Powell, 188 Ill. 107.

Appellee's evidence is to the effect that the usage or custom controlling the meaning of the term structural steel and iron, is uniform among all the large foundries, and structural steel works in Chicago, and that it includes all the parts made of steel and iron in a building which supports its framework, the walls and floors and the general superstructure of the building, including columns, beams, trusses and rafters. Appellant met this by countervailing proof, so that the settlement of this contention was, under the instructions, we think, properly left to the jury. The very contention of appellant that the hoppers, conveyor boxes and curtains form a part of the structural steel and iron of the malt house, was sufficient in itself at least to raise a doubt as to its correctness, especially so when confronted with the uncontradicted evidence that the hoppers were used to contain malt and the conveyors to convey malt, and the curtains used to divide air currents. It is evident that neither the hoppers, malt conveyors or curtains were parts of the permanent structure of the building, but were part of the operating machinery in the industry intended to be conducted in the building when completed. But as appellant injected a doubt about this into the controversy, it was the better course to prove, as was done, what was in fact regarded and understood by the usage and custom of the building trade, as structural steel and iron.

It might not be inappropriate here to suggest that appellant, having met the ruling of the court as to

usage and custom with proof in attempted denial, and allowed the dispute on this question to be submitted to the jury by thus joining issue thereon, the force of the original objection interposed to the court's ruling is materially weakened, if not wholly destroyed. The evidence demonstrates that appellee's attitude and contention that the hoppers, conveyors and curtains were extra work, as not being embraced in the contract, is consistent at all times. Dornfeld admits that as soon as these articles arrived, Volkmann made known his understanding of the extent of his contract by insisting that their installing was extra work, and not covered by the contract, and under this claim and with this insistence he proceeded to install the hoppers, conveyors and curtains, Dornfeld saying at the time that he did not care whether they were extra work or not, that appellee should proceed and put them in.

Which one of these contradictory accounts was the most worthy of credit, it was the province of the jury to determine. Whether they would give greater credence to Dornfeld or to Volkmann and Snell in their differing accounts of the transaction, and who was the most worthy of belief and which of the accounts was the most probable and consistent, was for the jury to determine. With the conclusion of the jury on this disputed point, after a careful perusal of the evidence, we are not inclined to disagree. To our minds, in weighing the evidence of these three witnesses, Dornfeld, Snell and Volkmann, and having in mind their relations to each other, their interests in the subject-matter of the controversy, the evident conflicting interests of Dornfeld, together with their actions throughout the whole transaction, there is more consistency in the contention, supported by the evidence of Snell and Volkmann, than in that resting for its support in the evidence of Dornfeld, and in this we are in harmony with the conclusions of the jury.

After a critical examination of the instructions given and refused, about which appellant complains, we are not able to perceive any error injuriously affecting appellant's rights, or which would justify a reversal of the judgment. While it is undoubtedly a correct legal proposition that a contract unambiguous in its terms cannot be varied, contradicted or modified by parol evidence of conversations before its execution, and that such a contract must be construed by the court as a question of law, and not left to the jury to determine the intention of the parties as a matter of fact, still, where, as in the case at bar, the language of the contract is ambiguous, involving the meaning of trade and professional terms used in it, then evidence as to such meaning or as to custom or usage of the particular trade controlling such meaning may be supplied by the evidence of those having knowledge of such usage or custom, and in such a condition what the parties intended by such ambiguous provision of the contract becomes and is a question of fact for the jury. And oftentimes to the attainment of justice in construing the meaning of a contract in controversy and determining what the parties intended thereby, evidence of what was said and done by the parties at and just prior to the making of the contract is admissible. It follows as a logical consequence, that the court properly refused all the instructions proffered by appellant which limited the jury in their consideration of the case to the contract, drawings and specifications, and excluded therefrom evidence as to the custom or usage of the building trade as to what was included in the terms structural steel and iron. Instruction No. 9 is vicious, in that it invades the exclusive province of the jury to determine the facts by telling them that "there is no evidence that Dornfeld had any authority to act for and on behalf of the defendant in regard thereto." This ignored the admitted fact of

Dornfeld's official relationship to appellant and his actions in the matter in controversy on their behalf, which might in law be all-sufficient to raise a presumption of agency necessitating evidence on the part of appellant to rebut. Instruction No. 15, refused, is open to the same vice, in telling the jury that Dornfeld had no authority to act as agent of appellant, etc. The instructions of the court to the jury tendered by appellee, we think state the law correctly as applied to the facts in evidence.

If the hoppers, conveyors and curtains were not embraced in the contract, then the work done by appellee in installing them was extra, for which, if accepted by appellant, it was liable to pay on the basis of a *quantum meruit,* regardless of the fact as to whether or not Dornfeld had authority to bind it by ordering the work done.

All the essential grounds argued for a reversal have been sufficiently adverted to. The verdict and judgment seem to do justice betwen the contestants, and the record disclosing no reversible error, the judgment of the County Court is affirmed.

*Affirmed.*