[No. 17826. Department Two. March 3, 1924.]

THE STATE OF WASHINGTON, *on the Relation of John Ottesen, Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, et al., Respondents.*[1]

HIGHWAYS (33)—CONTRACTS—PERFORMANCE OR BREACH—MISTAKE IN PLANS—LIABILITY. A contractor on state highway work was not required to hand place riprap where the maps and drawings furnished him did not specify the manner in which riprap was to be placed, although a blue print approved by and filed with the state highway commissioner had inserted "hand placed" after the word "riprap," where the county engineer testified that this was an error and not considered a part of the plans, the blue print shown at the time of the bidding omitted the words "hand placed," and the engineer informed the contractor that the riprap was not to be hand placed.

Application filed in the supreme court February 2, 1923, for a writ of mandamus to compel the director of public works and supervisor of highways to certify acceptance of work done under a highway contract, and to compel the state auditor to issue a warrant in payment thereof. Granted.

*Preston, Thorgrimson & Turner*, for relator.

*The Attorney General* and *C. G. Jeffers, Assistant,* for respondents.

PEMBERTON, J.—This is an action in mandamus by relator, contractor for the construction of Permanent Highway No. 1-D in Kitsap county, to require a certificate to the state auditor of the completion of the work, and to require the approval of the vouchers issued by the county commissioners and the issuance of warrants upon the permanent highway fund in the

[1]Reported in 223 Pac. 591.

amount of $4,933.26. The matter having been referred to the superior court of Kitsap county and the evidence and findings having been certified by the trial court, the question is here for final determination.

There is but one question to be determined, and that is whether or not the contractor was required under his contract to hand place the riprap used in this construction. This contract is for a permanent highway improvement as defined by § 6773, Rem. Comp. Stat. [P. C. § 6157]. Sections 6774 to 6779, inclusive, Rem. Comp. Stat. [P. C. §§ 6158, 6163], provide for the necessary preliminary steps to be taken for the improvement. It is provided that, after the highway commissioner determines that the proposed improvement is of sufficient public importance to secure his approval, the county engineer or construction engineer shall make all necessary surveys, prepare profiles, maps, plans and specifications, and upon the completion of the same a copy thereof shall be transmitted to the state highway commissioner. After an examination, and after making such changes therein or recommendations as he may deem advisable, the highway commissioner may certify his approval, and upon the receipt of this approval the county commissioners may pass a resolution adopting the same. It is provided that:

"  . . . No resolution thereafter adopted by said board shall have the effect of rescinding or annulling the resolution so adopting such profiles, maps, plans, specifications and estimate unless the same shall be approved by the state highway commissioner. The profiles, maps, plans, specifications and estimate as finally adopted by the board of county commissioners shall be filed in its office and become a permanent record of the board, and certified copies thereof shall be transmitted to the state highway commissioner and to the county engineer." [Rem. Comp. Stat., § 6779.]

Section 6781, Rem. Comp. Stat. [P. C. § 6765], authorizes the county commissioners to advertise for bids and let the contract, a portion of the section providing as follows:

" . . . Twenty per centum of the contract price shall be retained until the entire work has been accepted and no final payment shall be made until the state highway commissioner shall have examined the work or caused the same to be examined and certify to the state auditor that such work has been fully completed in accordance with the contract and the profiles, maps, plans and specifications governing such work. All payments to be made by the state upon contracts entered into in accordance with the provisions of this act shall be made by the state treasurer from the permanent highway fund hereinafter created, upon the warrant of the state auditor issued upon the presentation of proper vouchers by the person entitled thereto, said vouchers to be approved by the board of county commissioners, and the state highway commissioner, and, in case of final payment, to be accompanied by the certificate of the state highway commissioner as aforesaid."

It was provided in the contract as follows:

"In case any extra work should arise outside the lump sum contract, I hereby propose and offer the following unit prices which may be used as a basis of agreement for extra work done under this contract or deductions made therefrom:

Clearing per acre, $50 . . . . . .
Riprap hand placed, per cu. yd.,...........$4
Riprap loose, per cu. yd., ...............$2"

The contract contained this provision:

"It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction and supervision of the county engineer or construction engineer, who may be designated as the engineer in charge by the board and hereinafter called the engineer, and his decision as to the true construction and meaning of the profiles,

maps, plans and specifications and estimates shall be final.''

Together with the maps and drawings filed with the state highway commissioner and approved by him was a blue print of the profile of the work, shown as an exhibit in the case, which had inserted thereon the words ''hand placed'' after the word ''riprap.'' These words were upon the profile approved by the state highway commissioner, but were not upon the copy held by the county engineer shown to relator at the time he bid upon the improvement. There was also included in the maps filed with the highway commissioner a plan or map entitled ''Rock riprap, Permanent Highway 1-D, Township 24 North, Range 2 East, Kitsap County, Washington.'' This drawing indicated at or in what manner the hand placed riprap must be placed. Under the heading of ''Remarks'' it stated: ''Rock for riprap to be hand placed, all interstices to be filled with spawls.''

It is the contention of the highway commissioner that by his approval of the plans, including the last above mentioned, hand placed riprap is required and he should not certify that the contract is completed when in fact the riprap was not so constructed. The county engineer testified that it was an error upon his part in sending this last mentioned drawing to the highway commissioner and that he never considered it a part of the plans. At the time of bidding for this work, the relator inquired of the county engineer and was shown the blue print from which there was omitted the words ''hand placed,'' the same with this exception being a duplicate copy of the map filed and approved by the state highway commissioner. The relator observed that it did not specify whether the riprap was to be hand placed or loose and upon inquiry the county

engineer informed him that it was loose riprap. It appears that neither the relator nor the county engineer knew that the highway commissioner had included "hand placed riprap" in the plans approved by him as part of the improvement.

Relator proceeded with the work, which was completed under the direction of the county engineer, and it was inspected by a representative of the state highway department without criticism. The final estimates were approved by the county engineer and county commissioners. The final certificate was refused by the state highway commissioner upon the theory that the contract required relator to hand place the riprap.

There can be no question but what it was the honest understanding of both the county engineer and relator that the plans did not require the riprap to be hand placed. Nor was there anything on file in the county engineer's office, the engineer in charge of the work, to indicate that hand placed riprap was required. The question arises then, whether or not the expense of the error of the official of the state and county shall be placed upon the relator.

Speaking of a mistake in plans, the supreme court of Illinois, in the case of *Sexton v. City of Chicago*, 107 Ill. 323, stated:

"And if, through the city's negligence, a mistake occurred in making them out, the city must suffer the consequences."

The same case was again before the supreme court, 115 Ill. 230, 2 N. E. 263:

"The city owed the duty to have a competent person in charge of this office, and to see that he discharged his duty. His act in selecting and handing out plans and tracings was its act. There is nothing new in thus holding a municipality responsible for the want of fidelity of those who act for it."

In a later case, *City of Elgin v. Joslyn*, 136 Ill. 525, 26 N. E. 1090, the same court stated:

"That a contractor who bids for work is bound only by the specifications which are shown to him at the time he bids, and upon which his bid is based, and not by other specifications not then shown to him, and of which he was then ignorant, so that he did not and could not consider them in making the estimates for his bid."

There are not three parties to this contract, the state, the county and the contractor. There are but two parties, the county and the state on one side and the contractor on the other, and the state is bound by the act of the county engineer. This is especially true since the county engineer was the only person in charge of the work to whom relator could go for the desired information.

The writ should be issued as requested.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.

MITCHELL, J., concurs in the result.