[No. 23561. Department One. February 24, 1932.]

W. M. MEACHAM et al., *Respondents*, v. L. DIOGUARDI, *Appellant*.[1]

*Roberts, Skeel & Holman, W. E. Evenson,* and *Arthur E. Campbell,* for appellant.

*Preston, Thorgrimson & Turner,* for respondents.

BEELER, J.—Shortly prior to August 26, 1929, the United States of America entered into a written contract with the appellant, as general contractor, who undertook and agreed to make certain alterations, additions and revisions to several hospital buildings at the United States Veterans' Hospital at American Lake, Washington, in accordance with the plans and

[1] Reported in 8 P. (2d) 293.

specifications prepared by the United States Veterans' Bureau.

On August 26, 1929, the appellant, by written contract, sublet "all electric work according to the plans and specifications" to the respondents, who, in consideration of the sum of $6,649, agreed to furnish all necessary materials and perform all labor required by the contract. As the work progressed, the respondents, at the request of the appellant, furnished extra materials and labor amounting to the sum of $303.35, which, added to the contract price, made a total of $6,952.35. Of that sum, the appellant paid $5,239.24, leaving a balance due under the contract of $1,713.11, which sum the appellant refused to pay, claiming the respondents had failed to furnish lighting fixtures for buildings numbered 5, 6 and 7.

A trial to the court without a jury resulted in findings from which it was concluded that the appellant was indebted to the respondents in the sum of $1,-713.11. Motion for a new trial being overruled, judgment was entered against the appellant, and this appeal followed.

The first and principal question to be determined is whether the respondents were bound under their contract with the appellant to furnish and install electric fixtures in the hospital buildings numbered 5, 6 and 7. It is clear from the evidence that the respondents submitted their bid based upon a copy of the plans and specifications prepared by the United States Veterans' Bureau, and given to them by Joseph Milett, the appellant's agent. These specifications were introduced in evidence as respondents' exhibit "B." Exhibit "B" consists of 156 separate sheets bearing mimeographed printed matter on one side only. These sheets were not numbered. They were fastened together by means of a clamp.

That portion of the specifications (exhibit "B") showing the required lighting fixtures for the various hospital buildings embraces or extends over two sheets. The first sheet of the fixture schedule listed or indicated the fixtures required for hospital buildings numbered 2, 3 and 4, whereas the following sheet was missing. This missing sheet indicated the lighting fixtures that were to be installed in buildings numbered 5, 6 and 7. The reading matter on the first sheet was complete in itself. In other words, there is nothing on the first page to indicate that the fixture schedule was not complete or that there was a missing page. This defect in the specifications was not discovered until some two or three weeks after respondents had started the work under their contract. In other words, *the* specifications handed to the respondents, and upon which they based their bid, were *incomplete*.

The respondents contend they were under no obligation to furnish and install lighting fixtures in these three buildings because, when they submitted their bid, they relied on the fact and assumed that the plans and specifications furnished them by the appellant were complete and accurate.

Furthermore, the respondents' contract was primarily a wiring contract. They submitted their bid in two portions, one for the wiring, amounting to $5,424, and the other for the fixtures to be used on the entire job, amounting to $1,225. The bid as submitted made no segregation of the fixtures to be used in any particular building or buildings. It is clear that, at the time the bid was submitted, the respondents had in mind the furnishing of electric fixtures for buildings numbered 2, 3 and 4 only. Upon this phase of the controversy, the trial court found:

"That plaintiffs [respondents here] thereupon began and completed said work according to the *incom-*

*plete* set of plans and specifications theretofore prepared by the United States Veterans' Bureau and *furnished* to the plaintiffs by defendant [appellant here]; that plaintiffs had no knowledge or notice of any defect in said set of plans and specifications furnished them until after partial completion of their said contract with the defendant, and the circumstances were not such as to charge them with notice of any defects therein.''

■ But the appellant earnestly contends that the trial court erred in admitting in evidence respondents' exhibit ''B'' and their oral testimony to the effect that they submitted their bid and contracted with reference to the incomplete set of specifications. This argument might be sound if there had been an official set of plans and specifications. While there were numerous sets of plans and specifications, there was no official or master set to check against. Under these circumstances, the only duty devolving upon the respondents was that they perform the required work in accordance with *the* plans and specifications given them for the purpose of submitting a bid. This is exactly what they did.

Stripped of all unnecessary verbiage, we here have a situation of a general contractor furnishing an incomplete or defective set of specifications to a subcontractor upon which to submit a bid or estimate. This is not a case where the subcontractor seeks to escape the effect of his contract by claiming that he never saw or examined the specifications. Manifestly, it would be inequitable and unjust to hold that a subcontractor can not rely upon specifications given to him for the express purpose of submitting a bid. The rights of the parties are to be measured and determined by the particular set of specifications (exhibit ''B'') upon which the respondents submitted their bid.

The rule is well stated by the supreme court of

Illinois in the case of *Elgin v. Joslyn,* 136 Ill. 525, 26 N. E. 1090:

"A contractor who bids for work is bound only by the specifications which are shown to him at the time he bids, and upon which his bid is based, and not by other specifications not then shown to him, and of which he was then ignorant so that he did not and could not consider them in making the estimates for his bid."

See, also, *State ex rel. Otteson v. Clausen,* 128 Wash. 532, 223 Pac. 591.

We are satisfied from a careful examination of the specifications that the circumstances were not sufficient to put respondents upon notice of the defect in the specifications relating to the installation of electric fixtures in buildings numbered 5, 6 and 7. The same holds true as to the plans. On sheet 105-2 of the plans, there is an apparent suggestion that fixtures were required in building No. 5. But when we consider the great detail in the plans, the fact that new fixtures were required in buildings numbered 5, 6 and 7 might easily have escaped the attention of the respondents. Especially is this true since the specifications given to the respondents made no mention of any fixtures in buildings 5, 6 and 7.

At the conclusion of the testimony, the trial court made an oral pronouncement, in part, as follows:

"Gentlemen, these people never came to an agreement, and I think so far as that is concerned both operated in absolute good faith. There is nothing here to suggest any fraud or trickery; in fact, everything is to the contrary. . . .

"The copy of the specifications that Mr. Babcock received has a limited number. There are none for these three buildings, 5, 6 and 7, listed. That element alone might have suggested to him that something was missing in the plans, but, as has been pointed out here,

here was a lot of reconstruction work—they were changing this building and were adding here and there.

"As to the question of the plans themselves, on sheet 105-2 there is again a suggestion—not more than a suggestion—that fixtures are to be installed in building No. 5, and that, gentlemen, is the most difficult problem confronting the Court in the case. I can see that there may be a great difference of opinion on that subject.

"In all of these plans, however—and they seem to be quite voluminous—that appears to be about the only instance that can be pointed out that would call definitely the attention of a person examining the plans to the fact that under this contract new fixtures, as they say, were to be installed in certain of these buildings, that they had to be provided for and furnished. It is one point of difference—it is one point out of a mass of detail. It may well have escaped the observation or even the fairly close scrutiny of one examining that. As against that detail, that particular point, is apparently a complete list of this material to be placed in the buildings.

"It is my conclusion, gentlemen, that this item and the other facts and circumstances were not sufficient to put Meacham & Babcock upon notice of some defect in the plans such as would have required further investigation by them, and with that conclusion I come, of course, to the further conclusion that these parties never really had a contract."

 From a careful reading of the record, we are of the opinion that the evidence supports the findings and that the judgment of the trial court was right. We have repeatedly held, in cases of this character, that we will not disturb the findings of the trial judge unless it is made clearly to appear that the evidence preponderates against such findings. The trial judge had the witnesses before him. He observed their demeanor and appearance upon the witness stand. He was in a better position to judge of their credibility than are we.

■ There remains but one further question to be considered, and that relates to the form and substance of the judgment. It appears that the respondents incurred a bill of $1,767.97 for materials furnished by the Fobes Supply Company; that a suit was brought in the Federal court on this claim, and that the appellant and his surety, the Union Indemnity Company, were made parties defendant. Hence, that portion of the judgment which is based upon the conclusions, reading:

"That the plaintiffs are entitled to judgment against the defendant in the sum of $1,713.11, together with their costs and disbursements herein, without prejudice to any rights of defendant Dioguardi, to enter claim against the bond of Union Indemnity Co., surety on plaintiff's bond involved herein, in any other action or proceeding."

shall be modified so as to read:

Provided, that no execution shall issue upon this judgment until the lien claims filed against the principal contractor, L. Dioguardi, and against the surety on his bond, shall have been paid; and provided further, that the amount paid on such claims, or, if such lien claims shall have been reduced to judgment, then the amount paid on such judgment, shall be credited on the judgment of the plaintiffs against the defendant L. Dioguardi in this cause.

In all other respects, the judgment appealed from is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.