THE LITCHFIELD SAVINGS SOCIETY *vs.* J. IRVING DIBBLE ET AL., EXECUTORS.

Third Judicial District, New Haven, June Term, 1907.

BALDWIN, C. J., HAMERSLEY, PRENTICE and THAYER, Js.

In a written instrument styled an "underwriting certificate," the defendant promised to pay $700 to *W* or order, on or before a certain date, in consideration of which he was to receive from the payee a first mortgage bond for $1,000, of a specified corporation, and $500 par value of its capital stock. *Held:*—
1. That an indorsee could not recover the $700, without proving performance, or an offer to perform, on his part.
2. That the stock could be delivered only by means of a certificate for 50 shares; and therefore a tender to the defendant of a written

assignment of 50 shares which formed part of a block of 1,500, all of which stood in W's name on the books of the company, despite the plaintiff's attempt to secure its transfer, was not such a performance or offer to perform as entitled the plaintiff to recover.

3. That the worthlessness of the stock would have been immaterial had a proper tender been made.

Argued June 6th—decided July 30th, 1907.

ACTION on an underwriting certificate for damages and equitable relief, brought to and tried by the Superior Court in Fairfield County; demurrer to complaint sustained (*Gager, J.*) and judgment for defendants. *No error.*

The complaint stated this case : C. H. White & Company were the owners of three obligations, styled underwriters' certificates, each signed by John H. Ferris. These were identical in terms except that each bore a different ·number. The following is a copy of one :—

"Blue Mountain Iron & Steel Co.
of Baltimore City.
Underwriting Certificate.
"Bridgeport, Conn., August 14th, 1902.

" At the expiration of one year from October 16, 1902, (or any time before, at my option), I promise to pay C. H. White & Co., or to their order by endorsement hereof, the sum of seven hundred dollars, in consideration of which it is agreed by all parties hereto that I shall receive from the payee one thousand dollars, par value in the first mortgage five per cent. twenty year gold bonds of the Blue Mountain Iron & Steel Co. of Baltimore City, of an authorized issue of five hundred thousand dollars, and five hundred dollars par value of the capital stock of the said Blue Mountain Iron & Steel Co. of Baltimore City, of an authorized issue of five hundred thousand dollars, the payment of said sum by me and delivery of said securities to me to be made at the office of Importers & Traders Nat'l Bank, New York, N. Y., on (or before, at my option) October 16. 1903.

No. 66.  John H. Ferris."

White & Company owned also twenty-seven other cer-

tificates similar in terms, signed by other parties. The plaintiff, on October 16th, 1902, made a loan to White & Company on their note payable October 16th, 1903, at the Importers and Traders National Bank of New York City, taking as collateral security all the thirty certificates mentioned, each duly endorsed. White & Company also delivered to the plaintiff thirty bonds of the Blue Mountain Iron & Steel Company, of the description stated in the certificates, and a certificate for 1,500 shares of its capital stock of the par value of $10 each, in the name of White & Company, with a power of attorney executed in blank for their sale and transfer.

Prior to October 16th, 1903, the plaintiff deposited with the Importers and Traders National Bank the note of White & Company, the thirty underwriting certificates, the bonds, and the stock certificate, and notified John H. Ferris thereof. The latter never exercised his option to take up the stock and bonds specified in the three certificates signed by him, or demanded the same of White & Company or the plaintiff, or paid the $700 specified in each certificate. Prior to October 16th, 1903, the plaintiff attempted to transfer upon the books of the Blue Mountain Iron and Steel Company, of Baltimore City, Maryland, to each of said underwriters the number of shares of stock of said company called for by the underwriting certificates signed by him, and to procure certificates for said stock in the names of such underwriters respectively; but said company was and now is insolvent, and by reason thereof and of dissensions among its officers, and of the removal of its books from the State of Maryland to parts unknown, and of the refusal of the secretary of said company to make said transfers, they could not be effected upon the books of the company; but said bank, upon the demand of John H. Ferris, and by virtue of its possession of said certificate, could have assigned to John H. Ferris fifty shares of said stock for each underwriting certificate signed by him; but no such or any demand was made upon said bank.

On October 16th, 1903, White & Company were insol-

vent and ever since have been, and their note remains wholly unpaid.

In November, 1903, the plaintiff procured from White & Company thirty assignments each for fifty shares of stock, represented by said certificate for 1,500 shares of stock, and offered to deliver to John H. Ferris the underwriting certificates signed by him and, together with each, one of said bonds and one of said assignments of fifty of said shares of stock, with a power of attorney duly executed; and offered to surrender said certificate for 1,500 shares of stock to the secretary of said company to transfer, or to any person who might be agreed upon by the parties, to hold the same in trust for the protection of their respective interests; and demanded payment on each certificate of $700 and interest; but said Ferris refused said offers, and refused to pay the amount due upon said underwriting certificates or any part thereof.

Ferris died in 1904, and a claim on each certificate has been duly presented against his estate and disallowed.

The Blue Mountain Iron & Steel Company is bankrupt; its stock is of no value; and the secretary of said company still refuses to make any transfers of said stock.

The plaintiff is ready and willing to deliver to the defendants each of the underwriting certificates signed by John H. Ferris, deceased, and, with each, one of said bonds, and one of said assignments, with powers of attorney duly executed for the transfer thereof, and to surrender said certificates to this court or to any trustee whom it may appoint, that the defendants may be protected against any wrongful transfer thereof, and that said certificates may be held for the benefit of the defendants and of all parties in proportion to their interests therein.

Each certificate was made the subject of a separate count.

The claims were for damages, and by way of equitable relief a decree that upon delivery to the defendants, or either of them, of each of the three underwriting certificates signed by John H. Ferris, deceased, together with three bonds of the Blue Mountain Iron & Steel Company, of

Baltimore City, Maryland, of the par value of $1,000 each, and three assignments, each of fifty shares of the stock of said Company, with powers of attorney duly executed in blank, the defendants should pay to the plaintiff the sum of $2,100, with interest from October 16th, 1903, to the date of payment, together with the costs of suit; or that a suitable trustee be appointed by the court to hold said certificate of 1,500 shares of said stock, under orders of the court, and for the benefit of all persons interested therein.

*George D. Watrous* and *Henry F. Parmelee*, for the appellant (plaintiff).

*John H. Light*, for the appellees (defendants).

BALDWIN, C. J. Ferris, under the terms of the certificates which he signed, was not bound to pay anything unless he either received or was tendered something. *Bean* v. *Atwater*, 4 Conn. 3, 13. The language of each required him to pay $700, not at all events, but only if the holder of the certificate should deliver or offer to deliver to him a certain bond and $500 par value of the capital stock of a certain company. On October 16th, 1902, when the plaintiff made the loan to White & Company, and from that day to October 16th, 1903, Ferris was entitled at any time to tender that sum to the plaintiff, at the Importers & Traders National Bank, and demand the stipulated bond and shares of stock. The stock could only have been " delivered " by the delivery to him of a certificate for fifty shares. Whether it would have been necessary to tender such a certificate made out in his own name, or whether one made out in the name of another with a proper power of attorney for its transfer to him would have sufficed, it is unnecessary to inquire. The plaintiff was not prepared to deliver one of either description on October 16th, 1903, the date of the alleged default on the part of Ferris.

It is averred that before that day the plaintiff endeavored to exchange its certificate for 1,500 shares for thirty cerficates each for fifty shares, and could not obtain them. It is not averred how long before that day this endeavor was made. For aught that appears, such an exchange could have been effected if applied for promptly after the plaintiff accepted the collateral security, which was upon October 16th, 1902.

If, therefore, impossibility of performance could constitute in such a case an equitable excuse (as to which we intimate no opinion), no such impossibility is alleged.

The worthlessness of the stock is immaterial. Ferris could not have declined to accept it on that ground, had the plaintiff tendered it to him. The parties agreed on the delivery of that particular security and, whether it were valuable or valueless, each was entitled to insist on the performance of the contract in that respect, according to its expressed terms.

The plaintiff did not help its case by the tender to Ferris, in November, 1903, of three assignments by White & Company, each of fifty of the shares represented by the certificate for 1,500 shares in their names, with powers of attorney for their transfer, and the accompanying offer to surrender the latter certificate to the secretary of the company or to any one whom both parties might agree on to hold in trust for the protection of their respective interests. Even had this tender been made on October 16th, 1903, Ferris, as already stated, was entitled to stock certificates for fifty shares each. The assignments were at most only a means of thereafter obtaining such certificates. Nor could the plaintiff impose a new contract upon him by a demand for the interposition of a trustee. Equity sometimes reforms contracts, but it cannot, without a reformation, treat them as something substantially different from what they are. Ferris for $700 was to get a bond and, if not the legal title, then at least the means of promptly getting the legal title to fifty shares of stock. He could not be

compelled to accept in lieu of this, an equitable right to demand fifty shares through action to be taken by a trustee.

There is no error.

In this opinion the other judges concurred.