THE CITY OF BRIDGEPORT *vs.* THE T. A. SCOTT COM-
PANY, INC., ET AL.

Third Judicial District, New Haven, January Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Whether a contract is entire or severable, is to be determined by the
    object or intent of the parties as this may be gathered from a fair
    construction of the terms and provisions of the writing; and as aids
    in ascertaining the parties' intent, the singleness or apportionabil-
    ity of the consideration is entitled to great weight.
In the present case the defendant contracted with the plaintiff to build a
    sea-wall 3,925 feet long, pursuant to plans and specifications which
    formed part of the contract. These called for excavation, a masonry
    wall the full length, the use of both plain and reinforced concrete,
    the placing of large quantities of riprap on the seaward side, filling
    in behind the wall, and the driving of piles. The wall was to be
    finished and ready for acceptance by a prescribed date, and the
    consideration therefor was to be determined upon the basis of
    specified unit prices for each cubic yard of the various kinds of work
    involved. As the undertaking progressed, monthly payments
    were to be made of eighty-five per cent of the estimates of the plain-
    tiff's engineer, with payment in full within thirty days after the
    engineer's final estimate following the completion of the work.
    *Held:*—
1. That the clear intent of the parties was, on the part of the defendant
    to construct a sea-wall of the specified length, complete in all de-
    tails thought necessary to render it a useful and durable barrier
    against the encroachments of the sea, and on the part of the plain-
    tiff city to pay for such construction and nothing less; and that
    this conclusion—that the contract was entire and not severable—
    resulted whether regard was had to the language in which the
    agreement was couched, to its subject-matter, or to its con-
    sideration.
2. That the contract being entire, the defendant was responsible under
    the fifteenth clause of the specifications for the replacement or
    repair of 1,700 feet of the wall which, unprotected by any filling
    or adequate riprap, was greatly injured by a severe storm.
A contract may be entire, though the amount to be paid for the work
    agreed upon is left for ascertainment upon a unit price basis, and
    is payable in instalments as the work progresses.

Argued January 20th—decided March 5th, 1920.

ACTION to recover damages for the refusal of the defendant contractor to repair or make good the injury to a sea-wall which it had contracted to build for the plaintiff, caused by a severe storm pending the completion of the wall, brought to the Superior Court in Fairfield County, where a demurrer to the complaint was overruled and one to the second paragraph of the answer sustained (*Haines, J.*), and later, upon an agreed statement of facts, the cause was reserved for the advice of this court. *Judgment for plaintiff advised.*

June 26th, 1916, the plaintiff and the defendant Scott Company entered into a written contract whereby the latter agreed to construct a sea-wall 3,925 feet in length, in accordance with plans and specifications annexed to and made a part of the contract. The plans and specifications showed that the work contracted for covered excavation for the construction prescribed, the building of a masonry wall the entire length of such construction, the placing of large quantities of riprap on the seaward side of the wall, filling in behind it, the driving of piles, and the use of both plain and reinforced concrete. The work was to be finished and ready for acceptance on or before September 1st, 1917. The consideration named in the contract was one to be determined upon the basis of specified unit prices for the various kinds of work involved, to wit, for each cubic yard of excavation, each cubic yard of fill, each cubic yard of cement masonry, each cubic yard of reinforced concrete, each cubic yard of riprap, each pile driven, etc., etc. The contract provided that the city engineer should each month, as the construction progressed, make an approximate estimate of the value of the labor performed upon and materials incorporated into it, and that whenever the amount of such estimate or estimates for labor and materials furnished since the last previous payment exceeded $500, eighty-five per

cent thereof should be paid to the contractor on or before the fifteenth day of the following month. It further provided that the engineer should, as soon as practicable after the completion of the work contracted for, make a final estimate of its amount and value, and that the city should within thirty days thereafter pay to the contractor the entire sum so found, less the amount of previous payments and the sums entitled to be retained in accordance with the provisions of the contract.

The fifteenth paragraph of the specifications embodied in the contract reads as follows: "The contractor will be held responsible for all loss and damage to work or material caused by rain, wind and fire, or any other cause and shall replace any such damaged work or material. He will also be held responsible for all loss caused by difficulties or obstructions met with during construction and for all claims based upon patents or patent rights."

The defendant New Amsterdam Casualty Company, is the surety on a bond for $42,600 which the Scott Company, as principal, gave to the plaintiff for the faithful performance of the former's contract.

Upon the execution of the contract the Scott Company entered upon the prosecution of the work and on the 24th day of October, 1917, had proceeded so far that the masonry wall was in position and completed, save that approximately 390 feet of it had been only partially constructed and some of the coping of the remainder was not in place. The 390 feet had been left incomplete and to be finished in the following spring by agreement with the city, and for prudential reasons which possess no present importance. The unfinished coping would, in the ordinary course of events, have been in position in two more working days. At that time less than one third of the riprap was in place,

and in front of no section of the wall was it completely so. No filling had then been done. On that day a great and unusual storm arose and beat against the unprotected wall with such violence that 1,700 feet of it was greatly damaged.

The plaintiff thereupon demanded that the Scott Company repair the damage thus done and restore the work at its own expense. This it refused and still refuses to do, claiming that it is under no obligation to do so.

The cost of such repair and restoration would be $46,000.

Advice is asked in answer to the three following questions:—

"1. Whether The T. A. Scott Co., Inc., under its said contract was under legal obligation to repair said wall at its own expense .

"2. Whether said contract was an entire contract, obligating The T. A. Scott Co., Inc., under Section 15 of the specifications to repair all damage to said wall at its own expense until the entire work contemplated by said contract had been completed and accepted by the city.

"3. Whether upon the facts stated The T. A. Scott Co., Inc., under Section 15 of the specifications, was bound to repair said damage to said wall at its own expense."

*William H. Comley, Jr.,* for the plaintiff.

*Walter C. Noyes* of New York City, for the defendants.

PRENTICE, C. J. Counsel for the defendants concede that their clients' defense to this action is to be found, if found it is, in the divisibility of the contract between the Scott Company and the city. If that con-

tract embraced one entire undertaking, it is apparent that the provision contained in paragraph 15 of the specifications embodied in the contract, that "the contractor shall be held responsible for all loss and damage to work or material caused by rain, wind and fire, or any other cause and shall replace any such damaged work or material," fastens upon the Scott Company all responsibility for the storm damage, and obligates it to replace that portion of its construction which was destroyed or damaged by the action of the elements. If, on the other hand, the 1,700 feet of damaged masonry wall may be isolated from the rest of the work contracted to be done and treated by itself as an independent portion already completed of the larger work comprehended in the contract, a different situation would be presented. We are met, therefore, at the very threshold of the case with a fundamentally vital question, as to whether the contract was an entire and indivisible or a severable and divisible one.

"It is not always an easy matter to determine just what contracts are severable and what are not. The authorities agree that in determining whether a contract shall be treated as severable or as an entirety the intention of the parties will control, and this intention must be determined by a fair construction of the terms and provisions of the contract itself. In order to arrive at a correct construction, due regard must be had to the intention of the contracting parties as revealed by the language which they have employed, and to the subject-matter to which it has reference. . . . As a means of ascertaining the intention of the parties, various tests have been adopted. According to some authorities, the criterion is to be found in the question whether the whole quantity, service or thing—all as a whole—is of the essence of the contract. If it appears that the contract is to take the whole or none,

the contract is entire. . . . The singleness or apportionability of the consideration appears, however, to be the principal test. If the consideration is single, the contract is entire; but if the consideration is expressly or by necessary implication apportioned, the contract is severable. The question is ordinarily determined by inquiring whether the contract embraces one or more subject-matters, whether the obligation is due at the same time to the same person, and whether the consideration is entire or apportioned. If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items. The principle by which the courts are governed when they declare that a contract about several things, but with a single consideration in gross, is entire and not severable, is that it is impossible to affirm that the party making the contract would have consented to do so unless he had supposed that the rights to be acquired thereunder would extend to all the things in question." 6 R. C. L. p. 858, § 246.

The foregoing excerpt, with its omitted context, contains as clear and comprehensive a statement of principles of present pertinence as any one that has come under our observation. Its propositions are, however, by no means novel, but in full accord with those found in text books and cases, among which are the following: 2 Elliott on Contracts, § 1543; 2 Parsons on Contracts (9th Ed.) 517; 13 Corpus Juris, §§ 525–528; *Pacific Timber Co.* v. *Iowa Windmill & Pump Co.*, 135 Iowa, 308, 310, 112 N. W. 771; *Wooten* v. *Walters*, 110 N. Car. 251, 254, 14 S. E. 734, 736; *Straus* v. *Yeager*, 48 Ind. App. 448, 456, 93 N. E. 877; *Young & Conant Mfg. Co.* v. *Wakefield*, 121 Mass. 91, 92.

Examining the contract before us in the light of these principles, it is well-nigh impossible to conclude other

than that the intent of the parties was on the contractor's part to construct a sea-wall of a specified length, complete in all details thought necessary to make it serve as a suitable and serviceable barrier against the encroachments of the sea, and on the city's part to pay for such construction and nothing less. This is so whether one looks at the language in which the agreement is couched, its subject-matter, or its consideration. In so far as the language is concerned, its reading can leave no one in doubt that what the city was aiming to get and the contract undertaking to provide, was a serviceable and effective sea-wall. Into the composition of this wall, as it was designed, was to enter in the manner specified, masonry, riprap, fill and concrete, and certain units of each of these component parts, but the thing ultimately in view was a combination of all of these things, to wit, the "sea-wall" itself as a single entity capable of performing a desired office. Clearly, if language is an exponent of ideas, nothing less than this completed whole was in the contemplation of the parties. That was the subject-matter of the contract. That was what the contractor, in the language of the contract, agreed to build. In the specifications it appears that the sea-wall was to be constructed of specified materials and in a specified way, but the resultant was to be a sea-wall and not constituent masonry, riprap, fill, concrete, piles, etc.

If we turn to the matter of consideration we find the entirety of the contract still further emphasized. What the city was to pay was an entire amount, and one which could not be determined and was not payable until after the work in its entirety was completed. For no section, portion or unit of the work could the contractor receive full payment until he had constructed every other section, portion or unit. In other words, the right to receive payment was conditioned upon the

completion of the wall in its entirety. *City of Chicago* v. *Sexton,* 115 Ill. 230, 240, 2 N. E. 263.

It does not militate against the entirety of the contract that the amount to be paid was left for ascertainment upon a unit price basis. *Coburn* v. *Hartford,* 38 Conn. 290, 292; *Barlow Mfg. Co.* v. *Stone,* 200 Mass. 158, 160, 86 N. E. 306; *Shinn* v. *Bodine,* 60 Pa. St. 182, 185; *City of Chicago* v. *Sexton,* 115 Ill. 230, 240, 2 N. E. 263; *Bamberger Bros.* v. *Burrows,* 145 Iowa, 441, 453, 124 N. W. 333. Neither does it that the contract provided for payments in instalments as the work progressed. *Grassman* v. *Bonn,* 32 N. J. Eq. 43, 49; *Chamberlin* v. *Booth & McLeroy,* 135 Ga. 719, 720, 70 S. E. 569; *Quigley* v. *DeHaas,* 82 Pa. St. 267, 274.

The Superior Court is advised to render its judgment for the plaintiff to recover $46,000, the agreed amount of the cost of repairing the damage occasioned by the storm.

In this opinion the other judges concurred.