Taylor *v.* Lounsbury-Soule Co.

EDITH M. TAYLOR *vs.* THE LOUNSBURY-SOULE COMPANY.

Third Judicial District, New Haven, January Term, 1927.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

A finding that the plaintiff relied upon "some or all" of the fraudulent representations made to her in the sale of stock in the defendant corporation, was too general; it should have specified which of them, if not all, induced her to make the purchase.

Although a complaint is in such general terms that it is clearly open to a motion for more specific statement, nevertheless if it lays a sufficient basis for the introduction of evidence proving the cause of action alleged, it will support a judgment thereafter rendered upon it.

Misjoinder or combination of distinct causes of action in one count is waived by failure to raise a seasonable objection thereto.

The trial court concluded, first, that the plaintiff was induced by fraudulent representations to execute an agreement for the purchase of certain units of preferred and common stock in the defendant corporation, and, second, that the defendant was never in a position to issue or deliver the stock for which the plaintiff subscribed. *Held* that either of these conclusions was sufficient to sustain a judgment for the cancellation of the written agreement and for a return to the plaintiff of the consideration already paid by her.

The defendant was not bound by the unauthorized and unratified representation of its agent that it would repurchase the stock at any time within six months after the date of the agreement.

The fraudulent representations made to the plaintiff, which were found to have been material inducing causes of the sale, were none the less actionable because they may not have been the sole inducement.

The representation that the defendant "had arranged to elect" a certain person to its board of directors, when, in fact, no such arrangement had been made or contemplated, was fraudulent.

A contract by a corporation to sell stock which it has no power to issue is void. If, as in the present case, the agreement calls for the delivery of so many units at a fixed price per unit, each one consisting of two shares of preferred stock and one share of common stock of no par value, it is not severable but entire; and therefore, if the corporation is unable to perform its obligation with respect to the common stock, the vendee is entitled

Taylor *v.* Lounsbury-Soule Co.

to rescind the whole transaction, even though the corporation is in a position to deliver the preferred stock.

The common stock for which the plaintiff subscribed was stock of no par value which the defendant, acting under § 2 of Chapter 168 of the Public Acts of 1923, had voted to substitute for its stock having a par value, but at no time did the defendant comply with the provision of the statute that "no such corporate action shall be valid . . . unless a majority of the directors shall make, sign and swear to and file in the office of the secretary of the state a certificate stating that such corporate action has been duly approved by the stockholders and setting forth a copy of the vote of the stockholders, which vote shall show the details as to such corporate action." Although the plaintiff received and cashed several dividend checks, she received no stock certificate, never participated as a stockholder in the defendant's business, and, within six months after her subscription, she disavowed it and demanded the return of the consideration. *Held* that the plaintiff was entitled to relief under the general rule that the failure of a corporation to take the essential steps prescribed by statute for the increase of its capital stock empowers the subscribers to avoid their contracts and recover what they have paid unless they are guilty of laches or, by claiming and exercising the rights of shareholders for a substantial period of time or by other conduct, they are estopped, or unless, through insolvency or in some other manner, the rights of creditors have intervened.

The plaintiff was not bound to allege and prove that she had offered to return to the defendant the proceeds of the dividend checks which she had cashed, for, if unsuccessful in the present action, she would have been entitled to retain them, and, if successful, they were, as the trial court ruled, deductible from the amount owed her by the defendant.

Prior to the institution of the present action, the plaintiff brought, and then discontinued, a suit against the defendant in the courts of New York upon the unauthorized agreement of its agent to repurchase the stock. *Held* that the attempted pursuit of this vain and mistaken remedy, having in no way misled or prejudiced the defendant, constituted neither a waiver, or an estoppel, or an election precluding the relief sought in the present action.

The case of *Barrows* v. *Natchaug Silk Co.,* 72 Conn. 658, explained and distinguished.

Argued January 19th—decided April 11th, 1927.

ACTION to recover damages for fraudulent representations alleged to have been made by the defend-

ant's agent in the sale of corporate stock, to obtain the surrender of certain promissory notes and the cancellation of a written contract, brought to the Superior Court in Fairfield County and tried to the court, *Jennings, J.;* judgment for the plaintiff, and appeal by the defendant. *No error.*

The plaintiff is a resident of New York. The defendant is a Connecticut corporation, organized in 1918. Prior to September, 1923, it had been authorized to issue $435,000 of stock, being $350,000 nine per cent cumulative preferred, having a par value of $100 per share, and $85,000 of common stock, divided into three thousand four hundred shares of the par value of $25. In September, 1923, the defendant had outstanding the $85,000 of common stock and not more than $139,000 of preferred stock. On September 17th, 1923, a meeting of the stockholders of the corporation was held, at which a resolution was adopted providing that the capital stock be increased from $435,000 to $600,000, by increasing the preferred stock from three thousand five hundred to six thousand shares of the par value of $100, retiring the three thousand four hundred shares of the common stock and issuing twenty-five thousand shares of common stock of no par value, and that the amount of capital stock represented by such shares of stock without par value be $85,000. Resolutions were also adopted instructing the directors to file in the offices of the Secretary of State and the town clerk of Stamford a certificate of such increase, and authorizing them "to do anything which is necessary to retire the three thousand four hundred shares of the common stock and to issue in its place new common stock of no par value." After this meeting of the stockholders the board of directors authorized a change and increase of stock in accordance with the vote of the stockholders, but the de-

fendant has never filed with the Secretary of State a
certificate showing such attempted amendment of its
certificate of incorporation, secured approval by the
Secretary of State of such amendment, or paid to the
State the required fee for increase of capital stock.

At about the time of the holding of this meeting the
directors employed one Zork to market the stock of
the corporation, gave him general authority to take
such steps as were necessary to put the stock on the
market, and furnished him with an office in New York
City, letterheads, and circulars describing the stock.
In October, 1923, the defendant, by its agent Zork,
solicited the plaintiff to purchase some of its stock.
In order to induce such purchase Zork, acting as agent
of defendant and within the general scope of his
authority, represented to plaintiff that the stock was
cumulative nine per cent preferred stock of the par
value of $100 per share and no par value common
stock; that defendant was offering it for sale only in
units consisting of two shares of the preferred stock
and one share of common stock at the price of $300
for each unit; that all of the stock had been sold ex-
cept a small number of units; that defendant had
arranged to have the stock listed on the New York
Stock Exchange, and had arranged to elect one F. E.
Griffin as one of its directors; that the offer by it to sell
to plaintiff one hundred units of stock was made as a
special favor to her; and that the purchase would be
a fine investment for her. Also that of the $300 to be
paid for each unit, $100 was to be received by the de-
fendant and applied by it in payment for one share
of common stock of no par value. Each of these rep-
resentations was, the court finds, false. The defendant
was then selling its preferred stock and its common
stock separately, as well as in units; was offering to
sell an amount of stock largely in excess of one hun-

dred units; had not arranged to have the stock listed on the New York Stock Exchange, and it has never been so listed; had not arranged to elect, and has never elected, F. E. Griffin as one of its directors, and did not intend to apply $100 of each $300 to payment for one share of common stock, but intended to and did so apply only a part thereof and applied the balance for other purposes.

Further, in order to induce the plaintiff to purchase stock, Zork represented that if she at any time became dissatisfied with her investment, the defendant would repurchase the stock from her, for the amount which she had paid for it. He also represented he would put this statement in writing, and, on October 29th, 1923, executed in the name of the defendant and delivered to the plaintiff a writing, a copy of which was, on the trial, and is hereinafter, referred to as Exhibit A, agreeing that should the plaintiff's investment in the corporation prove unsatisfactory "we shall accord you the privilege of returning any securities you hold of our corporation and will be pleased to remit to you full purchase price. The above arrangements are to take effect any time after six months from the above date." The defendant corporation had no knowledge of this instrument and never authorized Zork to execute or deliver it.

The plaintiff, relying on "some or all" of these representations and in consideration of the delivery to her of the instrument of which Exhibit A is a copy, and as part of the same transaction as the delivery of Exhibit A, executed and delivered to Zork, as defendant's agent, an instrument, a copy of which is referred to as Exhibit B, reading as follows: "I hereby agree to purchase, as and when issued, one hundred units of the stock of the Lounsbury-Soule Company, Inc., said units consisting of two shares of nine per cent cumula-

tive preferred stock par $100, and one share of no par value common stock, for which I hereby agree to pay at the rate of $300 per unit, and I herewith tender payment in full for same." The plaintiff also executed and delivered to Zork, as defendant's agent, her promissory note for $3,000, payable December 5th, 1923; notes for $5,000 each, payable January 29th, April 29th, July 29th and October 29th, 1924, and January 29th, 1925, respectively; and one for $2,000, payable April 29th, 1925. She has paid the notes which came due December 29th, 1923, January 29th, 1924, and April 29th, 1924. Defendant discounted the note maturing April 29th, 1924, prior to its maturity, and the plaintiff paid it to the bank with which it was discounted, the bank being a holder in due course. The defendant retains all of the notes except those paid as aforesaid. At some time after the execution of Exhibits A and B, the defendant entered the transaction with the plaintiff in its books as a subscription to its new stock and made out a temporary certificate purporting to show that the plaintiff was the holder of one hundred shares of an issue of twenty-five thousand shares of common, no par value stock, and another purporting to show that plaintiff was the owner of two hundred shares out of six thousand shares of cumulative class A preferred stock. The defendant did not deliver either certificate to the plaintiff and she never received or accepted either of them.

The defendant paid Zork $4,500 for his services in obtaining the plaintiff's signature to Exhibit B.

Prior to April 29th, 1924, defendant sent plaintiff certain checks aggregating $855 which purported to be dividends on preferred stock, some on the two hundred shares and some upon a lesser amount. These checks were received and cashed by plaintiff. Subsequently defendant sent plaintiff certain other checks purport-

ing to be dividends on this stock, which plaintiff has not returned to defendant, but has never cashed.

Plaintiff, on April 23d, 1924, having learned that defendant had not elected F. E. Griffin to its board of directors, and having become dissatisfied with the stock described in Exhibit B, sent the defendant the following notice: "I am writing to inform I do not wish to be a stock holder in your Company after April 29th, 1924. You will therefore please arrange to return all notes you hold with my signature after the above date, also arrange taking off my hands stock I now hold according to your agreement made by your Mr. Zork under date of October 29th, 1923." The defendant repudiated the authority of Zork to make the agreement, Exhibit A, for repurchase of the stock. Further facts, found by the trial court in addition to those above set forth, are stated in the opinion.

*Jackson Palmer,* with whom was *Daniel E. Ryan,* and, on the brief, *C. Milton Fessenden* and *Matthew H. Kenealy,* for the appellant (defendant).

*Harrison Hewitt* and *Charles A. Watrous,* for the appellee (plaintiff).

HINMAN, J. The appellant claims that the finding should be corrected by striking out several paragraphs as found without evidence, but these, aside from a few inconsequential details, are either supported by evidence or are permissible inferences from other facts. The general finding as to the nature and extent of Zork's authority was elsewhere limited in the only respect which is of moment to the defendant—that he was not authorized to execute Exhibit A. It would have been more accurate to state that Zork agreed or consented to put Exhibit A in writing than that he

"represented" that he would do so, but his conduct in this regard is not included in those representations (stated in paragraphs seventeen and twenty-two) which are found to have been relied upon by the plaintiff. The finding, in paragraph twenty-three, that the plaintiff relied upon "some or all" of these representations is justifiably criticized. The court should have found which, if not all, of the representations constituted the inducements moving the plaintiff, but, as will subsequently appear, the evidence does not warrant the correction requested by the defendant, to the effect that the plaintiff was induced solely by three specific representations.

The essence of many of the numerous paragraphs of the draft-finding which are sought to be added is already included in the finding. It appears to be undisputed that the first notice to the defendant of the existence of Exhibit A was given by the plaintiff; that Mr. Winston, president of the corporation, disavowed the instrument and refused to cancel Exhibit B or return the amount paid; also, that the plaintiff has not offered to return the dividends received by her. These facts are added to the finding. Other claimed corrections will be noticed later.

The defendant conceded that the complaint set forth a cause of action for rescission of Exhibit B, as having been induced by fraudulent representations, and claimed that it also set forth issues sounding in contract, for breach of Exhibit A, but contends that the allegations do not embrace a cause of action or support a judgment based upon a right of rescission because of inability of the defendant to perform Exhibit B in that it was not at the time and never has been in a position to issue or deliver the units of stock which were the subject of the contract.

In addition to allegations appropriate to the facts

Taylor *v.* Lounsbury-Soule Co.

above stated as having been found, the complaint contained the following paragraphs: "9. In October of 1923, and at the time of the execution and delivery of the instrument of which Exhibit B is a copy, the authorized capital stock was not in excess of thirty-five hundred shares of cumulative preferred stock, having a par value of $100 per share, the dividend on which was to be seven per cent, which preferred stock was not redeemable, and thirty-four hundred shares of common stock, having a par value of $25 per share. . . . 11. Neither at the time of the execution and delivery of the instrument of which Exhibit B is a copy, nor at any time thereafter, has defendant been authorized to issue any common stock having no par value."

The prayers for relief were: (1) $15,000 damages; (2) a decree directing defendant to deliver to the plaintiff her notes which remain unpaid; (3) cancellation of the instrument of which Exhibit B is a copy; (4) if defendant is unable to deliver the notes, $18,000 additional damages. These claims are clearly appropriate to rescission and return of the consideration, i.e. the $13,000 already paid and the notes for the balance.

The allegations in paragraphs nine and eleven are not, it is true, elaborated by setting out the failure to file with the Secretary of State the required certificates of increase of capital stock and change in par value of common stock upon which the results alleged are predicated and, at least to that extent, "do not fully disclose the ground of claim." In this respect the complaint was, very likely, open to motion for more specific statement (General Statutes, §5637) but, lacking this, the general statement was a sufficient foundation for evidence of the contributing facts and after judgment is sufficient to support it. *Sprague* v. *Taylor,* 58 Conn. 542, 548, 20 Atl. 612. Furthermore, the

obvious inference from the allegations of these paragraphs was that any issue of preferred stock beyond the amount therein stated and any issue of common stock of no par value, were unauthorized, thereby putting the defendant on notice of claimed defects in the attempted amendment rendering the increase and change invalid. Misjoinder or combination of distinct causes of action in one count was waived by failure to make seasonable attack on that ground. *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 376, 42 Atl. 67.

In paragraphs twenty-seven and twenty-nine of the finding, the court finds all the facts as alleged in paragraphs nine and eleven of the complaint, except that the dividend rate on preferred stock was nine instead of seven per cent. For the reasons above indicated, the plaintiff's claim that these paragraphs should be stricken from the finding as based upon evidence not admissible under the pleadings is not assented to.

The final conclusion of the trial court, that the plaintiff is entitled to the relief demanded, and the resulting judgment, are based upon the conclusions that: "1. The plaintiff was induced to execute Exhibit B by false and fraudulent representations made by the defendant through its authorized agent, Zork. 2. In Exhibit B the plaintiff agreed to purchase 'as and when issued one hundred units of stock . . . consisting of two shares of nine per cent cumulative preferred stock par $100, and one share of no par value common stock'; neither at the time of the execution of Exhibit B nor at any time since then has the defendant been in a position to issue or deliver the units subscribed for." Either of these grounds, if adequately supported, is sufficient to justify the judgment rendered.

The parties agree necessarily, that in order to obtain.

a return of the consideration paid, on the ground of fraudulent representations, the plaintiff must establish that the representations were made as to an existing state of fact, that they were authorized or approved by the defendant, and that they were relied on by the plaintiff. The finding that the representations were false and, except those pertaining to repurchase reduced to writing in Exhibit A, authorized, is not questioned on appeal. The defendant's main contention in this connection is that none of these representations except that which related to the election of Dr. Griffin to the board of directors, that the investment would be a good one, and the unauthorized promise that the defendant would repurchase the stock, were causes inducing the plaintiff to subscribe to the stock. The trial court refused the requested correction of the finding to this effect, and was justified in so doing in view of all the evidence, notwithstanding, as stated in the memorandum on motion to correct, certain statements elicited from the plaintiff on cross-examination. Furthermore, it is not necessary that the false representations should have been the sole inducement. *Sprague v. Taylor, supra,* p. 551; 12 R. C. L. p. 358, §112. Even if the unauthorized undertaking to repurchase, evidenced by Exhibit A, was an inducement moving the plaintiff to subscribe, that will not avail the defendant if one or more other false representations were material inducing causes. It is not only evident, but apparently is conceded, that the representation concerning Dr. Griffin's election as a director was not only an inducement, but a powerful one, and the failure to so elect him appears to have been the immediate cause for the plaintiff's decision to terminate relations with the defendant. The finding is that the representation was that defendant "had arranged to elect" Griffin a director. A representation that an arrangement has

been made, when it has not been and there is no present intention to do so, is fraudulent. *Bitondi* v. *Sheketoff,* 91 Conn. 123, 99 Atl. 505; *Dowd* v. *Tucker,* 41 Conn. 197; *Garry* v. *Garry,* 187 Mass. 62, 72 N.E. 335; *Luchow* v. *Kansas City Breweries Co.,* 183 S.W. (Mo. App.) 1123, 1125; *Buena Vista Co.* v. *Billmyer,* 48 W.Va. 382, 37 S.E. 583. The conclusion that the plaintiff was induced by fraudulent representations obtains adequate support from this one consideration. Other material inducements disclosed by the finding serve to confirm and reinforce its correctness.

If, in agreeing to sell and deliver to the plaintiff one hundred units of its stock, each unit to consist of two shares of preferred stock, par $100, and one share of no par value common stock, the defendant contracted to do something which it had no power to do, its contract was void, and the plaintiff was entitled to so treat it and to reclaim the consideration with which she parted. *Litchfield Savings Society* v. *Dibble,* 80 Conn. 128, 67 Atl. 476; *Stevens* v. *Lippman,* 85 Misc. (N.Y.) 347, 350; *Union Ry.* v. *Sneed,* 99 Tenn. 1, 41 S.W. 364, 47 id. 89; *American Tube Works* v. *Boston Machine Co.,* 139 Mass. 5, 12, 29 N.E. 63; *Anthony* v. *Household Sewing Machine Co.,* 16 R.I. 571, 18 Atl. 176, 5 L.R.A. 575; 1 Cook on Corporations (8th Ed.) p. 605, §192; 5 Fletcher, Cyc. Corporations, §3469. Hence the second ground of judgment depends on the validity of the conclusion that defendant was not, at the time the contract was made, and has not since been, in a position to issue or deliver the units subscribed for. The defendant concedes that any overissue beyond the authorized amount of each class of stock would be void. *Scovill* v. *Thayer,* 105 U.S. 143. But it claims that no overissue of its preferred stock was required in order to comply with its contract with the plaintiff, because at least $350,000 of this stock was authorized

prior to the attempted increase of September, 1923, and not more than $139,000 was then issued and outstanding. The finding (paragraphs four, twenty-seven and twenty-eight) is to this effect, but states further (paragraph six), "defendant never filed with the Secretary of State any certificate or certificates setting forth the facts relating to the issuance of any stock other than the original issue of $50,000 of common stock as required by General Statutes, 1918, Section 3516." We do not deem it necessary to present purposes to determine the effect, if any, of such failure, upon the defendant's right to issue stock under the successive amendments made prior to 1923, nor the effect of the change as to dividends on and retirement of the preferred stock, which was attempted to be made. Exhibit B calls for a unit of performance embracing both preferred stock, par $100, and common stock of no par value; the consideration is single and not expressly or by implication apportioned; the contract is, therefore, not severable but entire. *Bridgeport* v. *Scott Co.,* 94 Conn. 461, 466, 109 Atl. 162, and cases cited. If the defendant was not authorized to issue common stock of no par value, even if it could have delivered the preferred stock stipulated for, it lacked power to perform its contract, and the plaintiff had the right to rescind, on that ground, since "it is impossible to affirm that the party making the contract would have consented to do so unless he had supposed that the rights to be acquired thereunder would extend to all the things in question." 7 R.C.L. §246, p. 859; *Trent Import Co.* v. *Wheelwright,* 118 Md. 249, 260, 84 Atl. 543. The decisive inquiry as to this phase of the case is, therefore, whether the defendant was authorized to issue the common stock contracted for.

The action of the defendant corporation with reference to a change of its par value common stock to

stock having no par value was taken under §2 of Chapter 168 of the Public Acts of 1923, which provides that any corporation organized under the provisions of Part III of Chapter 188 of the General Statutes "may change any of its stock, common or preferred, having a par value to an equal, greater or less number of shares of stock having no par value and, in connection therewith, may fix the amount of capital stock represented by such shares of stock without par value, . . .; but, except as provided in section 3430 of the General Statutes, no such corporate action shall be valid unless approved by a vote of two-thirds of all outstanding stock of each class at a meeting of stockholders warned and held for that purpose nor unless a majority of the directors shall make, sign and swear to and file in the office of the secretary of the state a certificate stating that such corporate action has been duly approved by the stockholders and setting forth a copy of the vote of the stockholders, which vote shall show the details as to such corporate action." No such certificate was filed with reference to the attempted change, and the plaintiff claimed, and the trial court held, that, in consequence, the defendant possessed no valid authority to issue the common stock contracted for by the plaintiff.

The defendant maintains that the stock subscription of the plaintiff was not invalidated by this omission, but that, as between these parties and under the circumstances disclosed by the finding, it was a mere irregularity having no effect upon their respective rights and liabilities. For support of this contention the defendant relies mainly upon *Barrows* v. *Natchaug Silk Co.,* 72 Conn. 658, 45 Atl. 951. In that action a receiver for the defendant company was appointed on April 1st, 1895. One Bevin presented to the receiver a claim for the amount paid to the corporation for

shares of its capital stock which shares he claimed were void because the certificate of the increase of stock, of which the shares in question were a part, was not made and filed as required by §1954 of the General Statutes, Revision of 1888. The fifty shares subscribed for by Bevin were issued to him in April, 1889, and he paid therefor $3,750 in cash, and gave notes for $1,250, which he never paid. At that time the corporation was not indebted to any who were creditors under the receivership. Bevin received his certificates of stock, attended several meetings of the stockholders, voted for its directors, and received semiannual dividends until about the time the company went into liquidation.

The disallowance of his claim by the receiver was sustained, this court holding (p. 664): "The certificate prescribed by this section [1954] as well as the certificates prescribed in other sections in the same chapter of the statutes, are required to be made and filed with the Secretary of the State and with the town clerk, primarily for the benefit of the public; that is, of persons who may desire to do business with the corporation. . . . There is nothing in any of these sections to show that failure to file these notices, or any of them, makes the stock void. As between the shareholders and the corporation the shares, so far as this omission is concerned, may be good, and the shareholders be compelled to pay. These omissions are doubtless irregularities. The statutes, however, provide no penalty for them other than that the directors are made personally liable for all the debts of the corporation. Such irregularities do not exempt the subscriber, after he has acted as a stockholder, as he did here, from paying for his stock."

That case, however, exhibits several important differences, both of statute law and of fact, from those

obtaining here. Section 1948 of the General Statutes of 1888 provided for the filing and recording of a certificate, setting forth the articles of association and other details, in the office of the Secretary of State and a duplicate in the office of the town clerk, and §1954 for a similar filing and recording of certificates of increase of capital stock; but no disability or penalty, other than personal liability of directors (§1959), was imposed for failure to comply therewith, and no supervisory function was required of the Secretary of State except to see that the certificate stated that twenty per cent or more of the stock had been paid for in cash. The Corporation Act of 1901 and amendments thereto worked radical changes in these and many other respects. It was provided by §60 of Chapter 194 of the Public Acts of 1903, now §3505 of the General Statutes of 1918, that every certificate shall be filed in the office of the Secretary of the State, "who shall examine the same, and, if he shall find that it conforms to law and that all taxes" (on capital stock imposed by §3506) "have been paid," shall approve and record the same. No act required to be set forth in any such certificate shall be valid until such certificate has been approved as aforesaid, but this provision shall not relieve the corporation, its officers, directors, and stockholders from any liability which might otherwise be enforcible against them or any of them, or invalidate any of the stock of such corporation in the hands of bona fide holders without notice." Section 25 of Chapter 157 of the Public Acts of 1901 (now §3519 of the General Statutes of 1918), concerning changes in certificates of incorporation, provided that "no such amendment shall be valid" unless a certificate, setting forth such amendment, shall be made and filed in the office of the Secretary of the State in the same manner as required by §3505, and a certified

copy filed in the office of the town clerk. This repeated imposition of invalidity as a penalty for failure to file the required certificate, made by legislation enacted shortly subsequent to the decision in the *Natchaug Silk Co.* case, is significant of an intention to change the law in that respect. *Blodgett* v. *Union & New Haven Trust Co.*, 97 Conn. 405, 116 Atl. 908; Lewis' Sutherland on Statutory Construction, §499. The provision to the same effect in §2 of Chapter 168 of the Public Acts of 1923 is clearly analogous to that in §3519 and should be given the same effect. There is no express warrant in this Act for application of the exception mentioned in §3505, and even if it might, by implication, be held to be applicable, it would not put the plaintiff in a position where she is bound to take stock which is invalid and consequently unmarketable. As the plaintiff suggests, "this proviso is designed as a shield for the innocent, not as a weapon of offense for use against one in the plaintiff's position."

Another important distinction is that here, as the finding shows, we are concerned with a solvent corporation, while *Barrows* v. *Natchaug Silk Co.* and the other cases cited in which informalities or omissions in the procedure for increase of capital stock have been held unavailable as a defense to liability upon subscriptions thereto, involved the rights of creditors who had dealt with the corporation presumptively on the faith of the stock in question. *Handley* v. *Stutz*, 139 U.S. 417, 11 Sup. Ct. 530, was a creditors' suit on a stock subscription; *Scott* v. *Deweese*, 181 U.S. 202, 21 Sup. Ct. 585, an action by the receiver of a national bank upon an assessment upon shareholders. And in the latter case the court suggests (p. 212): "It may be . . . that the defendant, by proper proceedings instituted in good faith and in due time before the suspension of the bank, could have had his subscrip-

tion cancelled. . . . But immediately upon the failure of the bank the rights of creditors attached, . . . and a shareholder who was such when the failure occurred could not escape . . . liability . . . upon the ground that the bank had issued to him a certificate . . . before, strictly speaking, it had authority to do so." In all of these cases, too, the element of estoppel by conduct was strongly present; the stock had been issued and delivered and the holders had unequivocally claimed, been accorded, and exercised, the rights of shareholders for a considerable time.

If the rights of creditors are not involved, the general rule is that the omission of essential steps prescribed by the statute authorizing an increase of capital stock will entitle subscribers for the increased stock to avoid their subscriptions and recover what they have paid, unless they are estopped. 5 Fletcher, Cyc. Corporations, §3468; *Anthony* v. *Household Sewing Machine Co.*, *supra; Congress & Empire Spring Co.* v. *Knowlton,* 103 U.S. 49, 57; *Atlantic Const. Co.* v. *Kreusler,* 40 N.Y. App. Div. 268, 57 N.Y. Supp. 983; *American Tube Works* v. *Boston Machine Co., supra; Union Ry.* v. *Sneed, supra; Wood* v. *Union Gospel Church Bldg. Asso.,* 63 Wis. 9, 22 N.W. 756; *Lincoln* v. *New Orleans Express Co., Ltd.,* 45 La..Ann. 729, 12 So. 937; 1 Cook on Corporations (8th Ed.) §§288, 290. In order to deprive the plaintiff of the benefit of this rule, she must have so assumed the position and exercised the rights of a stockholder, and manifested such acquiescence as to amount to a ratification and estoppel, or been guilty of laches. 5 Fletcher, Cyc. Corporations, §3469. Her situation in this respect is essentially different from that of Bevin, in *Barrows* v. *Natchaug Silk Co.;* he had acquiesced and acted and participated fully as a stockholder for about six years, until the insolvency of the corporation, which con-

tinued acquiescence was held (p. 665) to be sufficient to deprive him of a right to question the validity of his shares. The plaintiff never received certificates of stock nor acted as a stockholder; within less than six months after subscribing she unequivocally disavowed relations with the corporation other than as a claimant for return of her money and notes, paid no more notes as they came due, and negotiated no more dividend checks. The defendant could not have misunderstood or been misled as to her attitude. Elements which are essential to constitute an estoppel are absent. *Crawford* v. *Bridgeport*, 92 Conn. 431, 103 Atl. 125.

The finding discloses that on December 6th, 1924, the plaintiff brought an action against the defendant in the courts of the State of New York, based upon, and seeking a return of the purchase price of the stock in question in accordance with, the agreement Exhibit A. The defendant interposed, as special defenses, that this instrument was neither authorized nor ratified by the corporation, and that it was illegal and void under the New York statutes because the defendant had no surplus out of which to repurchase the stock. The defendant admits, in its brief, that shortly after the filing of this answer the plaintiff brought the present suit and thereafter discontinued the New York action, but contends that the commencement of the suit in New York constituted an election to rely on Exhibit A and a waiver of or equitable estoppel against any claim for relief except upon that agreement. The plaintiff, it is found, had no knowledge of the provisions of the Connecticut statutes on the subject of corporations and there was no evidence as to when she learned of the defendant's failure to comply therewith. Zork's lack of authority to bind the defendant by Exhibit A, and the facts upon which the defense of illegality were based, were matters exclusively within the knowledge

of the defendant. The plaintiff's reasons for abandoning sole reliance upon Exhibit A, in the face of these defenses, and resorting to other grounds for relief, appear to have been both obvious and well advised, especially in the light of the court's finding, in this case, that the agreement was, in fact, unauthorized. There is nothing to indicate that the defendant changed its position or was otherwise misled to its prejudice by the course pursued by the plaintiff, and so there is no estoppel on this ground. *Webb* v. *Moeller*, 87 Conn. 138, 141, 87 Atl. 277; *Townsend Savings Bank* v. *Todd*, 47 Conn. 190, 219. It does not constitute a waiver—the intentional relinquishment of a known right. *Lee* v. *Casualty Co.*, 90 Conn. 202, 209, 96 Atl. 952. Her mistaken attempt to secure a remedy upon Exhibit A to which, it developed, she had no enforceable right, was not an election precluding her from seeking relief on other grounds. *Abbadessa* v. *Puglisi*, 101 Conn. 1, 124 Atl. 838. Neither is there manifested any such "inexcusable delay" as would amount to laches. *Allis* v. *Hall*, 76 Conn. 322, 334, 56 Atl. 637.

The failure of the plaintiff to allege or prove an offer to return to the defendant the amount of the dividend checks received and realized upon by her, affords no ground for complaint. If she failed in this action, she would be entitled to retain the proceeds of these checks. If she succeeded, the amount of such proceeds was less than she would, in any event, be entitled to recover. The trial court, in computing the damages awarded, has given the defendant full credit therefor. *Kley* v. *Healy*, 127 N.Y. 555, 561, 28 N.E. 593; *American Tube Works* v. *Boston Machine Co.*, *supra.* We have accorded due deliberation to the other suggestions advanced in the able and voluminous

Riccio *v.* Plainville.

briefs, but find therein no occasion for further comment.

There is no error.

In this opinion the other judges concurred.