OTTO EPSTEIN *v.* THE UNION & NEW HAVEN TRUST COMPANY.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 10—decided June 26, 1940.

*Hugh M. Alcorn* and *Henry P. Bakewell,* with whom was *Joseph P. Cooney,* for the appellant (plaintiff).

*Frank E. Callahan* and *Frederick H. Wiggin,* for the appellee (defendant).

AVERY, J. The facts essential to the decision of this case as disclosed by the finding, which cannot be materially corrected, are these: On September 7, 1928, the plaintiff executed and delivered to a corporate trustee one hundred and forty-five promissory notes, aggregating $115,000, and on that date executed a mortgage deed on property in Hartford to the trustee

and its successors, in trust for the owners or holders of the mortgage notes described in the instrument. On August 19, 1930, the defendant The Union & New Haven Trust Company was appointed by the Superior Court successor trustee. All the notes secured by the mortgage came due by its terms within five years from its date, and within the first four years $10,000 was paid on account of the principal indebtedness. On September 7, 1933, the mortgage was extended for a period of three years and the noteholders accepted a reduction of interest from 6 per cent. to 5 per cent. per annum, the plaintiff paying interest at that rate to September 7, 1937, since which time no interest has been paid. The defendant was anxious to liquidate the mortgage indebtedness as soon as practicable, and in November, 1935, suggested to the plaintiff that it might be willing to recommend liquidation to the noteholders with a discount of 20 per cent.; and later, in August and September, 1936, the plaintiff and defendant conferred and corresponded with respect to the payment of the mortgage, and at that time the defendant agreed to refrain from foreclosure for a further period of three years under certain conditions, one requiring prompt payment of all interest and another reserving to the defendant full right to commence foreclosure at any time if the conditions were not complied with or if for any reason it deemed it advisable to do so.

On September 16, 1937, the plaintiff had a conference at the office of the defendant with its president and another officer, and these officers saw a letter which the plaintiff had received from an insurance company stating that the company would only be willing to loan from $40,000 to $45,000 on the property. At that conference the plaintiff proposed that the noteholders accept an amount less than the actual

principal indebtedness of $105,000. Later, on November 18, 1937, a further conference was held at New Haven between the plaintiff and the same officers of the bank in reference to refinancing the mortgage. The plaintiff went to this conference with the intent of making the best bargain he could. He then offered to the defendant as trustee $86,000 in discharge of the mortgage debt. He stated at that conference to the president and the other officer of the bank that he had obtained an offer of a new mortgage on the premises for approximately half of $105,000, that he would be unable to raise by mortgage on the premises more than from $50,000 to $55,000 and that through borrowing on his insurance policies and at his bank he was able to supplement the new mortgage so as to produce $86,000. He stated that this amount was all the money he could raise and offered to pay this to the defendant as trustee for the noteholders in discharge of his total debt. In fact, on November 12, 1937, the plaintiff had received a formal notice that upon his application the New York Life Insurance Company had approved a loan of $90,000 on the property. The plaintiff's reason for not informing the officers of the defendant that he was able to obtain a mortgage loan which, after commissions and expenses, would net approximately the amount of his offer and that the New York Life Insurance Company had approved a loan in the amount of $90,000 was because he desired to make the best bargain he could and buy the indebtedness as cheaply as possible.

At this conference, the president of the defendant stated that he would submit to the noteholders the plaintiff's proposition to pay $86,000 in full payment. Thereafter, on November 19, the defendant submitted a form letter to the noteholders apprising them of the amount of the plaintiff's offer and recommend-

ing that it be accepted by them. Several of the note-holders called upon the officers of the defendant and inquired about the details of the negotiations between it and the plaintiff, and were informed by its officers of the amount the plaintiff said he would be able to raise and the sources through which he would be able to raise it; and thereafter the inquiring noteholders, because of the information given and because of reliance upon it, gave their acceptances to the plaintiff's offer. Prior to January 13, 1938, the defendant had received acceptances from all the noteholders and on that day the defendant wrote the plaintiff that acceptances of his proposition had been received from all the noteholders. Thereafter, on January 27, 1938, the defendant first learned that the plaintiff, on November 18, 1937, had completed arrangements with the New York Life Insurance Company for a loan to him of $90,000, to be secured by a new first mortgage upon the premises. On that day, after inquiring from the plaintiff the amount which he had arranged to secure by mortgage from the New York Life Insurance Company and receiving his reply that this fact did not concern them, the officers of the defendant informed the plaintiff that they had received information concerning the loan of $90,000 and that the defendant could not go through with the transaction, pursuant to which the plaintiff was to pay $86,000, without first submitting the information to the noteholders, and they informed the plaintiff by telephone of their intention to write the noteholders to permit them to withdraw their acceptances. On February 7th, the defendant wrote to the noteholders advising them of the information it had received in order that they might have the opportunity, if they so desired, to withdraw their acceptances of the proposition; and, prior to February 15, 1938, sixteen of the eighty-four

noteholders, holding notes amounting in the aggregate to approximately $25,000, withdrew their acceptances and on that date the defendant through counsel notified the plaintiff that it had received communications from a number of the noteholders informing it of the withdrawal of their acceptances. Soon afterward, this suit was started by the plaintiff for damages for breach of the agreement.

The fundamental question upon this appeal is whether the plaintiff's failure at the conference of November 18, 1937, to inform the defendant that he was able to raise the sum of $86,000 net by a mortgage on the property and his statement that the most he could raise by mortgage was from $50,000 to $55,000, and the balance of the $86,000 he would raise by bank loans and upon his insurance policies, and that he could not raise more than $86,000 in all, constituted such misrepresentations and concealment of fact under the circumstances as to vitiate the agreement. The trial court has found, and these findings cannot be corrected so as to materially advantage the plaintiff's position, that the statements and representations made by the plaintiff were false, were intended to mislead the defendant, were material for the purpose the plaintiff had in view to make the best bargain he could with the noteholders, and were relied upon by the defendant and by those of the noteholders who inquired concerning its negotiations with the plaintiff, and that the defendant and the inquiring noteholders were misled by these statements.

The plaintiff claims that the defendant was only concerned in getting the mortgage paid, that it was willing to accept the offered sum of $86,000 without regard to the source from which the plaintiff might secure it, and that therefore the defendant was not induced by the misrepresentations to act as it did.

The plaintiff's statements that he could raise, by mortgage, not more than $50,000 or $55,000 and not more than $86,000 in all were untrue, and the finding that the defendant and the noteholders in accepting his offer of $86,000 in satisfaction of the mortgage relied on these statements and they were inducing causes to the making of the agreement, are supported by the evidence. Apart from the agreement made as a result of the misrepresentations, the defendant had never assented to accept the sum named. Had it and its noteholders known that the plaintiff could secure $90,000 by mortgage upon the premises instead of, as he represented, that he could so raise not more than $55,000 and that he would have to obtain the difference between the sum he had stated could be obtained by the mortgage and $86,000 by resort to his insurance policies and personal credit, that fact would have produced a very different situation as regards their willingness to accept his offer, and the finding that it and they would not have done so had he informed them of the mortgage he could secure, cannot be corrected.

Like any other contract, an agreement to accept a lesser sum than the amount due in full settlement and payment of a debt liquidated in amount must be founded upon a consideration. *Keller* v. *Rohde,* 109 Conn. 244, 248, 146 Atl. 228; *Crucible Steel Co.* v. *Premier Mfg. Co.,* 94 Conn. 652, 656, 110 Atl. 52. However, the defendant in its brief has stated that it did not consider it necessary to argue this matter and we, therefore, do not discuss this phase of the case.

The facts found present the case of an accord obtained by misrepresentation of a material fact. It is a firmly established rule than an agreement obtained by misrepresentation of material facts whereby an unfair settlement to the prejudice of the other party is procured cannot be enforced. Misrepresentation

and fraud sap the foundation of the whole edifice and bring it down. *Johnson & Burns, Inc.* v. *Hayden,* 98 Conn. 185, 191, 119 Atl. 50; *Story* v. *Norwich & W. R. Co.,* 24 Conn. 94, 113; *Feltz* v. *Walker,* 49 Conn. 93, 98; *Taft* v. *Valley Oil Co., Inc.,* 126 Conn. 154, 159, 9 Atl. (2d) 822; 1 C. J. 569. This is sufficient to sustain the judgment and it is not necessary to consider whether the same result would follow from the incidental failure of the plaintiff to disclose that he could obtain a mortgage on the property for $90,000. *Taylor* v. *Lounsbury-Soule Co.,* 106 Conn. 41, 51, 137 Atl. 159. The defendant was entitled to rely upon the representations of the plaintiff and was under no duty to inquire into the sources from which he proposed to secure the money to make the payment. *White* v. *Miller,* 111 Conn. 53, 57, 149 Atl. 237.

As these considerations dispose of the case, it is unnecessary to consider the claim argued at length in the defendant's brief that it acted only in the capacity of trustee and could not be held liable in its individual corporate capacity.

The suggestion in the plaintiff's brief that foreclosure was barred because of the extension agreement is disposed of by the finding that no interest had been paid on the mortgage notes since September 7, 1937, and further by the provision of the extension agreement that if any of its provisions were not complied with or if for any reason the trustee deemed it advisable foreclosure might be commenced.

We note that many pages of the printed record are filled with the contents of the numerous exhibits admitted in evidence at the trial, several of which are previously printed in it or are annexed to the pleadings as exhibits. When a transcript of the evidence is certified, exhibits admitted in evidence come before this court as a part of it without being printed unless

the trial court so orders, and there is no justification for the additional expense and trouble to parties and court officials which results from printing their contents at length in the record.

There is no error.

In this opinion the other judges concurred.